IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 6:23-cv-00678 |
| v. | ) ) ) | <u>C O M P L A I N T</u> |
| CAVCO INDUSTRIES, INC. d/b/a PALM HARBOR HOMES; PALM HARBOR HOMES, INC.; PALM HARBOR VILLAGES, INC. | ) ) ) ) | JURY TRIAL DEMAND |
| Defendants. | ) ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Steve Oliver Mayr. As alleged with greater particularity in paragraph(s) 14-40 below, the Equal Employment Opportunity Commission ("the Commission") alleges that Cavco Industries, Inc. d/b/a Palm Harbor Homes; Palm Harbor Homes, Inc.; and Palm Harbor Villages, Inc. (collectively, "Defendants") discriminated against Mayr, who is White, based on his close family association with individuals who are Black and biracial. Such discrimination in violation of Title VII, included subjecting Mayr to a hostile work environment and changing the terms and conditions of his employment by taking actions that lowered his commissions causing his total compensation to be reduced. Finally, Defendant terminated Mayr because of his association with individuals who are Black and biracial.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Texas.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4. At all relevant times, Defendant Cavco Industries, Inc. d/b/a Palm Harbor Homes ("Cavco"), a Delaware corporation, has continuously been doing business in the State of Texas and the City of Waco, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Cavco has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Palm Harbor Homes, Inc., a Delaware Corporation, has continuously been doing business in the State of Texas and the City of Waco, and has continuously had at least 15 employees.

7. At all relevant times, Defendant Palm Harbor Homes, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. At all relevant times, Defendant Palm Harbor Villages, Inc., a Delaware corporation, has continuously been doing business in the State of Texas and the City of Waco, and has continuously had at least 15 employees.

9. At all relevant times, Defendant Palm Harbor Villages, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## **ADMINISTRATIVE PROCEDURES**

10. More than thirty days prior to the institution of this lawsuit, Steve Oliver Mayr filed a charge with the Commission alleging violations of Title VII by Defendant Palm Harbor Homes, Inc.

11. On June 12, 2023, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. On August 3, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Since at least January 1, 2020, Defendants have engaged in unlawful employment practices at Palm Harbor Village of Waco, located at 4740 I-35, Waco, Texas 76705, in violation of Section 706(e)(2(a) of Title VII, 42 U.S.C. 2000(e)-2(a).

15. Defendants build manufactured homes, modular homes, park model RVs, commercial buildings, and vacation cabins. They also operate sales centers from which they distribute their products.

16. Mayr is White with a multi-racial family. Two of his brothers-in-law are Black and his nephew is biracial. Mayr has a close family relationship with a number of Black individuals.

17. Mayr worked for Defendants as a Sales Consultant at Defendants' Killeen location from July 23, 2018, until December 2019. During this time, Mayr won awards for his high sales numbers and was part of the elite "President's Club."

18. As a Sales Consultant, Mayr was responsible for driving consumer sales, ensuring that consumers understood the home product offerings, engaging customers during their purchase decision, and facilitating the purchase and delivery of homes.

19. Mayr transferred to Defendants' Waco location where he worked as a Sales Consultant from January 2020 until July 2020.

20. Mayr's compensation included both a base salary and commissions on home sale profits.

21. Defendants subjected Mayr to a hostile work environment based on his race, White, beginning when Defendants learned Mayr is a member of a multiracial family with Black and biracial members.

22.     Sometime after Mayr's transfer to Defendants' Waco office, the Waco General Manager learned that Mayr belonged to a racially blended family during a conversation in which Mayr refused to engage in talk that was disparaging of Black individuals.

23.     Upon learning of Mayr's racially blended family, the General Manager remarked that Mayr's sisters were "mud sharks," a racist slur about White women who have romantic relationships with Black men.

24.     With this information, the Waco General Manager and other employees increased their use of racially disparaging remarks which Mayr was made to endure, and which he considered unwelcome and offensive. During Mayr's employment in Waco, employees at the store, including the General Manager and Assistant Manager, engaged in frequent, regular use of racial slurs and hostile language about both Black individuals and White individuals who have close relationships with Black individuals.

25.     Examples of the racial slurs and hostile language speech used in the workplace include the following: the General Manager asked Mayr whether he agreed with the statement: "Black lives don't matter." He called a White loan officer with whom Defendants' employees regularly interacted a "mud shark" because she married a Black man. The General Manager also joked about asking the loan officer whether her husband picked cotton. During work meetings, employees referred to Black people as "monkeys," stated that every Black man should be dead, and discussed running Black people over with cars.

26.     When Black customers entered the Waco store, Mayr's coworkers made disparaging remarks about the customers and would refer to the Black customers as "Mayr's people." They would leave Mayr to be the Sales Consultant to interact with Black Customers.

28. Example of abusive, hostile and degrading treatment to which Mayr was subjected by coworkers or managers, included, but was not limited to conduct such as leaving of bottles of urine in Mayr's chair, and the Assistant Manager's use of the restroom near Mayr's desk with the door open while asking Mayr how it smelled.

30. The General Manager regularly permitted all employees except Mayr to leave work early but left Mayr alone to close the facility.

31. The General Manager instructed Sales Consultants to pitch sales to clients who, according to accepted workplace practice, should have been Mayr's clients. This resulted in Mayr losing commissions.

32. Management took action to delay or block Charging Party's sales. They would falsely notify Mayr that his customer's loans had not been approved and would delay notifying Mayr of the approval for weeks. Without notice of approval, Mayr could not act to finalize the sales. As a result, Mayr lost commissions and/or commissions did not appear during the appropriate sales period.

33. The General Manager also altered the terms of Mayr's sales to include extras Mayr had not agreed to give the customers. This had the effect of reducing the profit margin of Mayr's sales and thereby reducing his commissions.

34. The cumulative effect of the actions taken by Defendants enumerated in paragraphs 14-40 was to change the terms and conditions of Mayr's employment.

35. On or about July 27, 2020, Defendants fired Mayr because of his race, White, and association with Black and bi-racial family members.

36. In the weeks leading up to Mayr's termination, Defendants gave Mayr written and verbal corrective counseling for failing to meet sales goals.

37. Any failure by Mayr to meet sales goals is attributable to actions taken by Defendants to slow, reduce, or stop Mayr's sales.

38. Despite the corrective counseling, at the time of Mayr's termination, Mayr had a number of sales in process that met the sales goals communicated to him.

39. When the General Manager terminated Mayr, all commissions connected to sales that were in process at the time of Mayr's termination were rerouted to the General Manager himself and not paid out to Mayr.

40. Defendants' proffered reason for terminating Mayr, insubordination, is not credible and thus, a pretext for discrimination.

41. The effect of the practices complained of in paragraphs 14-40 above has been to deprive Mayr of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

42. The unlawful employment practices complained of in paragraphs 14-40 above were intentional.

43. The unlawful employment practices complained of in paragraphs 14-40 above were done with malice or with reckless indifference to Mayr's federally protected rights.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from subjecting individuals who associate with persons of a race other than their own to: a hostile

work environment, changed terms and conditions of employment including lost compensation, and termination as a result of their race.

  B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals who associate with persons of a race other than their own and that eradicate the effects of its past and present unlawful employment practices.

  C. Order Defendants to make Mayr whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Mayr or frontpay in lieu thereof.

  D. Order Defendants to make Mayr whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 14-40 above, including relocation expenses, job search expenses, late fees attributable to missed paychecks, and medical expenses not covered by the Employer's employee benefit plan, in amounts to be determined at trial.

  E. Order Defendants to make Mayr whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 14-40 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

  F. Order Defendants to pay Mayr punitive damages for having acted with malice and/or reckless indifference to Mayr's federally protected rights, as described in paragraphs 14-40 above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

/s/ Robert A. Canino
ROBERT A CANINO
Regional Attorney
Oklahoma State Bar No. 011782

/s/ Suzanne M. Anderson
SUZANNE M. ANDERSON
Assistant Regional Attorney
Texas State Bar No. 14009470

/s/ Alexa Lang
ALEXA LANG
Trial Attorney
Texas Bar No: 24105356
Alexa.lang@eeoc.gov
(972) 918-3648

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Dallas District Office
207 S. Houston St., 3rd Floor
Dallas Texas 75202